IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT RICHARDSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| V. | ) | No. 3:16-cv-1779-K |
| | ) | (No. 3:09-cr-108-K-1) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Movant Robert Richardson, a federal prisoner, filed, through court-appointed counsel, a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See* Dkt. No. 1. The government filed a response opposing relief, *see* Dkt. No. 6, and Richardson has filed a reply brief, *see* Dkt. No. 9. The Court **DENIES** the Section 2255 motion for the following reasons.

Richardson pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). And, under the Armed Career Criminal Act (the "ACCA"), he was sentenced, on September 14, 2011, to the statutory minimum of 180 months of imprisonment. *See United States v. Richardson*, No. 3:09-cr-108-K-1 (N.D. Tex.).

He now collaterally challenges the applicability of the ACCA to his sentence under *Johnson v. United States*, 576 U.S. \_\_\_\_, 135 S. Ct. 2551 (2015). As recounted in that decision,

> Federal law forbids certain people – such as convicted felons, persons committed to mental institutions, and drug users – to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:
>
>> "any crime punishable by imprisonment for a term exceeding one year … that –
>>
>> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).
>
> The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

135 S. Ct. at 2555-56 (citation modified).

In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. The decision thus "affected the reach of the [ACCA] rather than the judicial procedures by which the statute is applied" and therefore is "a substantive decision and so has retroactive effect under *Teague[ v. Lane*, 489 U.S. 288 (1989),] in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). But *Johnson* did "not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." 135 S. Ct. at 2563.

A *Johnson* claim under Section 2255 thus requires that a movant show that his

constitutional right to due process was violated—or that he was sentenced in excess of the maximum authorized by law (for example, that he received a minimum sentence of 15 years under Section 924(e), as opposed to a maximum sentence of 10 years under Section 924(a)(2))—because he was sentenced under the ACCA's residual clause. And the United States Court of Appeals for the Fifth Circuit, "join[ing] the majority of [its] sister circuits," has held that a court "must look to the law at the time of sentencing to determine whether a sentence was imposed" in violation of *Johnson*—that is, it was imposed under the ACCA's residual clause, as opposed to its enumerated offense clause or its force clause. *United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018) (collecting cases); *see also id.* at 725 (noting that, "[i]n determining potential reliance on the residual clause by the sentencing court," a reviewing court "may look to (1) the sentencing record for direct evidence of a sentence, and (2) the relevant background legal environment that existed at the time of the defendant's sentencing and the presentence report ('PSR') and other relevant materials before the district court" (citations, internal quotation marks, and brackets omitted)).

Prior to his conviction in this Court, Richardson was convicted of murder in Dallas County. *See State v. Richardson*, No. F05-19422 (194th Jud. Dist. Ct., Dallas Cnty., Tex.); *Richardson*, No. 3:09-cr-108-K-1, Dkt. No. 80-1 at 21-43 (relevant charging documents, written plea agreements, judicial confessions, and criminal judgment included in the PSR). Richardson fired multiple rounds through the door of the victim's residence, killing the victim.

And, also in Dallas County, he was twice convicted of aggravated assault with a deadly weapon. *See State v. Richardson*, Nos. F03-19397 & -19398 (194th Jud. Dist. Ct., Dallas Cnty., Tex.); *Richardson*, No. 3:09-cr-108-K-1, Dkt. No. 80-1 at 21-43 (relevant charging documents, written plea agreements, judicial confessions, and criminal judgment included in the PSR). As to the first aggravated-assault conviction, Richardson threatened the victim with bodily injury by using or exhibiting a firearm. As to the second, he shot the victim with a firearm during the commission of an assault.

Taking the aggravated-assault predicates first, a conviction for aggravated assault under Texas law requires that a person commit "assault as defined in [Texas Penal Code] Section 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE § 22.02(a). And the United States Court of Appeals for the Fifth Circuit recently concluded "that Texas aggravated assault is a violent felony under the ACCA." *United States v. Combs*, ___ F. App'x ___, No. 16-11402, 2019 WL 2450898, at *2 (5th Cir. June 11, 2019) (per curiam); *see also id.* at *1 (noting that the Court of Appeals previously "determined that the Texas assault statute is divisible—that is, each subsection of this assault statute contains 'independent groups of elements for committing multiple crimes'" and thus allows a court to apply "the modified categorical approach" (quoting in *United States v. Albin Torres*, 923 F.3d 420, 425 (5th Cir. 2019))).

To reach its conclusion, the Fifth Circuit panel in *Combs* relied on the ACCA's

force clause, Section 924(e)(2)(B)(i), *see* 2019 WL 2450898, at *1, observing that "[t]he Supreme Court has stated that 'physical force' in this provision means '*violent force*—that is, force capable of causing physical pain or injury to another person,'" *id.* (quoting *Curtis Johnson*, 559 U.S. at 140). Thus, *Combs* relies on a Supreme Court precedent in place when Richardson was sentenced in September 2011 and further affirms then-existing Fifth Circuit precedent placing Texas aggravated assault within the ACCA's force clause. *See United States v. Martinez*, 962 F.2d 1161, 1168-69 (5th Cir. 1992) ("[T]he offense of [Texas] aggravated assault ... require[s] proof of the use or threat of use of physical force." (footnote omitted)); *see also United States v. Shelton*, 325 F.3d 553, 561 (5th Cir. 2003) (holding that, because Texas "misdemeanor assault requires bodily injury it includes as an element the use of physical force").

As such, looking to the law in place when Richardson was sentenced—particularly the *Curtis Johnson* definition of "physical force"—Richardson has not shown by a preponderance of the evidence, *see Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980); *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982); *United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019), that the Court relied on the residual clause to find that his Texas aggravated assault convictions qualified as ACCA predicates.

The *Shepard* documents included in Richardson's PSR concerning the aggravated assault convictions also support this conclusion—that these crimes fit under the ACCA's force clause. *See Wiese*, 896 F.3d at 725; *Shepard v. United States*, 544 U.S. 13,

5

16, 20-21 (2005).

Further, even if Richardson could show that the Court relied on the residual clause in 2011, given the current law in this circuit—that Texas aggravated assault remains a violent felony under the ACCA—as explained in *Combs*, Richardson would be unable to show prejudice. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding); *see, e.g., Van Cannon v. United States*, 890 F.3d 656, 661-62 (7th Cir. 2018) (where "[t]he government confessed the Johnson error," "[t]he only remaining dispute concerned the question of prejudice," and during that dispute, a movant is "entitled to show that under current caselaw, one or more of [his] remaining predicates could not be counted" (citation omitted)); *Monroe v. United States*, No. 3:16-cv-1693-G-BK, 2019 WL 1930139, at *3 (N.D. Tex. Apr. 9, 2019) ("[E]ven if the sentencing Court had relied on the ACCA's residual clause—thus implicating *Johnson*—Monroe cannot demonstrate prejudice because as the law currently stands, his two Texas aggravated assault convictions are still viewed as crimes of violence under the force clause." (citations omitted)), *rec. adopted*, 2019 WL 358509, at *1 (N.D. Tex. Jan. 29, 2019).

Turning to the murder predicate, a person commits murder in Texas "if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or

6

attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02(b).

The Court was unable to locate controlling authority on whether Texas murder "has as an element the use, attempted use, or threatened use of physical force against the person of another." Section 924(e)(2)(B)(i). The Court therefore begins its analysis by looking at Texas's murder statute and determining whether that statute is "divisible." As the Fifth Circuit has summarized the inquiry,

> if the underlying statute of conviction is "divisible," the federal court may consider whether the alternative crimes described in the statute are separately crimes of violence. The methodology for this inquiry was explained by the Supreme Court in *Mathis*, ___ U.S. ___, 136 S. Ct. 2243, 2248-49 (2016), where the Court distinguished between "various means of committing the offense," which evidence a "non-divisible" statute, and "alternative elements of each offense" embodied by the statute, which is a "divisible" statute because "a jury must agree" on the elements. *United States v. Howell*, 838 F.3d 489, 497 (5th Cir. 2016).
>
> If a statute is divisible, though it does not on its face qualify as a [violent felony] … , federal courts may employ a modified categorical approach and rely on a limited class of documents from the underlying conviction to determine which alternative elements formed the conviction's basis. *Shepard*, 544 U.S. at 16, 20-21.

*United States v. Herrera-Serrano*, 703 F. App'x 342, 344 (5th Cir. 2017) (per curiam) (citation modified).

The Court will assume without deciding here that Texas's murder statute is non-divisible. *Compare id.*, *with, e.g., Diko v. State*, 488 S.W.3d 855, 858 (Tex. App. – Fort Worth 2016, pet ref'd) ("'[P]enal code sections 19.02(b)(1) and 19.02(b)(2) do not describe different offenses; rather, they set forth alternative methods of committing the

7

same offense.' Thus, '[t]he jury unanimity requirement is not violated when, as here, the defendant was indicted under a statute providing alternate means of committing the same offense.'" (quoting *Lozano v. State*, 359 S.W.3d 790, 821-22 (Tex. App. – Fort Worth 2012, pet. ref'd))).

But, even assuming that the statute is non-divisible, Texas murder, regardless of the particular means employed, categorically requires an act "that causes the death of an individual."

Turning back to *Curtis Johnson*, the Supreme Court, considering Section 924(e)(2)(B)(i), held, in 2010—again, before Richardson's sentencing in this Court—that, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140 (citation omitted; italics in original). And "[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed." *United States v. Checora*, 155 F. Supp. 3d 1192, 1197 (D. Utah 2015); *see United States v. Baez-Martinez*, 258 F. Supp. 3d 228, 232-33 (D.P.R. 2017) ("It can hardly be denied that an unnatural death is a type of physical injury—in fact it is the ultimate physical injury." (citation omitted)); *see also In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) ("Common sense dictates that murder is categorically a crime of violence under the force clause [of 18 U.S.C. 924(c)]." (citing *United States v. Hill*, 832 F.3d 135, 140 (2d Cir. 2016) ("[T]he categorical approach must be grounded in reality, logic, and precedent, not flights of

fancy." (citation omitted)))).

The *Curtis Johnson* understanding of "physical force" was considered in *United States v. Castleman*, 572 U.S. ___, 134 S. Ct. 1405 (2014), in the context of a conviction for a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9), the definition of which includes "an offense that … has, as an element, the use or attempted use of physical force," *id*. § 921(a)(33)(A)(ii). In *Castleman*, the Supreme Court held that the "use of physical force" may also occur indirectly: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." 134 S. Ct. at 1415.

More recently, the Fifth Circuit, en banc, abandoned its case law limiting *Castleman* as to use of force. *See United States v. Reyes-Contreras*, 910 F.3d 169, 180-82 (5th Cir. 2018) (en banc) (rejecting the reasoning of the panel majority in *United States v. Rico-Mejia*, 859 F.3d 318 (5th Cir. 2017)):

> In sum, *Rico-Mejia*'s reasoning that *Castleman* is confined to the context of misdemeanor domestic violence confuses two distinct issues. The part of *Castleman* that was so confined was the discussion regarding degree of force: whether the definition of a misdemeanor conviction of domestic violence encompasses offensive touching or, instead, requires a level of violent force. … But *Castleman*'s analysis of whether use of force requires direct or indirect application did not rest on any distinction regarding the degree of force or on whether it was a case of domestic violence. That confusion may have misled the panel in *Rico-Mejia*. In any event, that is now fixed.

*Id.* at 180-81 (footnotes omitted); *see also id.* at 181 (prior to this en banc decision,

9

"[t]he Fifth Circuit [stood] alone in restricting the reasoning of *Castleman* on direct versus indirect force to misdemeanor crimes of domestic violence. Every other regional court of appeals—that is to say, the First through Eleventh Circuits and the District of Columbia Circuit—ha[d] squarely rejected the direct-indirect distinction, and for good reason." (collecting cases)).

Considering precedent from other circuits properly applying *Castleman*, its "holding that one can 'use physical force' indirectly, such as by employing poison, applies equally in the ACCA context" if "the degree of physical force" is sufficient. *Baez-Martinez*, 258 F. Supp. 3d at 235; *see, e.g., United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) ("Here, as in *Castleman*, Rice had been convicted of 'intentionally or knowingly ... causing physical injury' to another person. His offense of conviction therefore includes the use of physical force as an element. *Castleman* does not end our analysis, however, because the Court held there that the physical force requirement of § 921(a)(33)(A)(ii) could be 'satisfied by even the slightest offensive touching.' By contrast, physical force under the guidelines refers specifically to 'violent force,' meaning 'force capable of causing physical pain or injury to another person.' On the record here, we conclude that Rice's conviction includes the use of violent force as an element 'since it is impossible to cause bodily injury without using force "capable of" producing that result.'" (citations omitted)); *see also Baez-Martinez*, 258 F. Supp. 3d at 235 n.7 ("Consider two scenarios where someone tricks a victim into drinking a noxious liquid. The liquid in the first scenario simply causes its drinker to fall asleep,

whereas the second liquid is a potent poison capable of causing death. Under *Castleman*, both scenarios constitute the 'use of' some degree of physical force, since in both there was 'force exerted by and through concrete bodies,' and both liquids are knowingly being used as a device to cause physical harm. However, the degree of physical force used is clearly different. The second scenario [alone likely] constitutes a 'use of physical force' under the ACCA since the degree of physical force is 'capable of causing physical pain or injury to another person.'" (citations omitted)).

A district court in the Southern District of Texas, prior to *Reyes-Contreras*, confronted this issue in the related context of Texas attempted murder and, relying on "[c]ourts in other jurisdictions [that] have concluded that other state's attempted murder convictions are proper predicate offenses under the use of force clause," that court found that a Texas attempted murder conviction qualifies "as a predicate offense under the use of force provision," *United States v. Gonzales*, Nos. 2:11-CR-801 & 2:14-CV-388, 2017 WL 978700, at *4-*5 (S.D. Tex. Mar. 13, 2017) ("Attempted murder is generally considered a 'prototypically violent crime.'" (quoting *James v. United States*, 550 U.S. 192, 208 (2007), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015)); citations omitted); *cf. United States v. Calderon-Pena*, 383 F.3d 254, 271 (5th Cir. 2004) (Smith, J., dissenting) ("Attempted murder may be undertaken by other than attempts to cause 'bodily' or 'physical' contact, yet no court reasonably would hold that attempted murder is a crime that does not involve the 'attempted use of physical force against the person of another.'").

In sum, because the death of an individual cannot be caused absent the "use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), Richardson's conviction for Texas murder remains a "violent felony" under the ACCA after *Johnson*. Richardson has not, moreover, carried his burden to show by a preponderance of the evidence that, in September 2011, the Court considered Texas murder to be a violent felony under the residual clause. *See, e.g., Curtis Johnson*, 559 U.S. at 140. Nor has Richardson shown prejudice under *Brecht*. *Cf. United States v. White*, Crim. No. 04-20076(01), 2019 WL 898572, at *4 (W.D. La. Feb. 21, 2019) ("[I]f considered today, the holding in *Reyes-Contreras* suggests that White's conviction would be considered under the elements clause.").

The Court acknowledges authority in this district holding that Texas murder does not fall under the force clause. *See Vickers v. United States*, No. 3:15-cv-3912-B-BH, 2018 WL 2725285 (N.D. Tex. June 5, 2018). But that decision expressly relied on the Fifth Circuit authority limiting application of *Castleman*—authority subsequently overruled in applicable part by *Reyes-Contreras*. *Compare Vickers*, 2018 WL 2725285, at *2 (citing *Rico-Mejia*, 859 F.3d at 322-23), *with Reyes-Contreras*, 910 F.3d at 187 (overruling, in whole or in part, *Rico-Mejia* and its progeny).

For these reasons, Richardson has not shown that a *Johnson* sentencing error has resulted in prejudice by showing that there are no longer three predicate convictions for a violent felony under either the ACCA's enumerated offenses clause or its force clause.

**SO ORDERED.**

Signed July 25tt, 2019.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE